Thank you, your honor, and may it please the court. Katherine Bruce on behalf of plaintiff appellant Douglas Shields. I will reserve three minutes for rebuttal. At core, this case is about ensuring pro se litigants have their claims fully heard. I'll focus on three points today. I'll begin by addressing the equal protection claim for disparate discipline, then turn to the Norwood instruction and briefly address procedural due process. Beginning with the equal protection claim, the court said the equal protection claim was dismissed at screening. Defendants agree that this equal protection claim was dismissed at screening, so everyone agrees really that the issue is whether the allegations in the complaint state a claim such that they should have proceeded beyond the screening stage, and that's really well trodden ground. When I look at the screening order, I don't see it mentioning the disparate disciplinary treatment at all. It only mentions the disparate access to the chapel. That's right, your honor. The procedural circumstances here are a bit unusual. The screening order was silent on this aspect of the equal protection claim, and it was only after trial where the district court made clear that actually this component of the equal protection allegations, this claim was dismissed earlier at the screening stage. So, can it do that? I think the way to interpret the post trial order is to say that the screening orders silence on the discipline claim was effectively dismissal. So the district court allowed those claims to proceed that were explicitly mentioned in that order, and then dismissed the rest. I think we have to take the district court at its word that that's what it was doing, and defendants certainly appear to agree that really the operative question here is what do the allegations in the complaint say as far as whether there's a claim for equal protection based on the discipline? And here the allegations do. The record at 241, 242 identify specific defendants who are alleged to have singled out and punished my client on the basis of his sexual orientation. The allegations state that he appeared in a photograph and was punished, whereas others in the photograph were not. Why is that the proper inquiry for who is in a similar situation? Are there any other allegations beyond just who's depicted in the photograph for the similarly situated element? For the similarly situated element, the allegations are that the reason for the punishment was appearing in the photograph. The other people who appeared in the Mr. Shields, the only one who had taken the photograph, at least according to the record, out of the chapel? So two things, Your Honor. First, if we're just looking at the allegations in the complaint, that's not clear from the allegations in the complaint, which is really the operative question when it comes to failure to state a claim. Second, the record as it was developed later made clear that the photograph in particular, and posing for the photograph especially, was itself compromised and was sufficient to form the basis for the compromise charge. You hear this in the recording of the disciplinary hearing in which the defendant Gilliland said posing for a photograph screams compromise. In the summary of the disciplinary hearing, posing for a photograph is itself the favorable treatment that we're talking about. But what are we supposed to do, and I guess this picks up on your conversation with Judge Koh, where this is screened out, although we're not sure, people weren't necessarily clear that it was at the time, but then the record further develops. Are we not asking for the equal protection claim here just whether the allegations state a claim? We're asking whether the allegations state a claim such that it should have proceeded throughout the course of the litigation and ultimately to trial. This claim wasn't tried and it should have been, and really at core that's the problem. But if, I guess if we're going to look at the remaining record, there are all sorts of things that differently situate Mr. Shields for purposes of the punishment. So if the state gives the reasons that it seemed like one of the predominant reasons was that he had taken this and was in possession of contraband, and the other two people in the photos, was there any evidence about whether they had taken anything or were in possession of contraband? Well, if we're looking at the evidence at trial, Your Honor, two things. So first, as I mentioned, the photograph was especially important to the compromise charge. And secondly, the other people in the photograph weren't even investigated for compromise. One of them testified at trial. He said he was never subject to the search that my client was. And so we'll go back to that. Well, I guess there are two searches. So which search are you talking about? He testified that he wasn't subject to any kind of search, including a self-compliance search, or at least we don't know. He was never investigated. His testimony supports that inference for staff compromise. And that's notwithstanding the fact that other testimony at trial supported that it was a very serious charge, that it was taken extremely seriously by the institution. And it also is noting that the chaplain, you hear him on the recording of the disciplinary hearing, he said he allows the other clerks to have access to the same office supplies. Compromise is really about favorable treatment. Should we consider the supplies as well when we're trying to figure out who are the correct comparators for Mr. Shields? There's nothing in the record that says the other individuals in the photograph with the chaplain also had the CDs and the trash bags and other items, right? Right. But the record does say that the other clerks had access to those things, that the chaplain gave them those things, which is, you know, it's self-compromising. That's what he said on the recording. It's supported in the record that those individuals weren't even investigated for compromise. And I think that's critical because the testimony at trial was also that it's taken very seriously, that it's a very serious infraction, and that it poses, you know, all these dangers. Well, I mean, at the back end of the process, some of that came through in the proceedings, but where going in, if we look at the the charges, does, in your view, do the defendants frame the disparate discipline, the allegedly disparate discipline, as compromise based on facts that are similarly situated to the other people in the photo? Where should we find that charge, that that's how the — in other words, like, where's your best evidence in the record that the State was disparately treating intentionally, right, with purpose to disparately treat Mr. Shields? So two things, Your Honor. First, again, I think our position here is that the allegations in the complaint are really what's operative here, because this claim wasn't actually tried. The jury was never asked about this aspect of equal protection, so that's, I think, point number one, and defendants agree on that. They agree that this is really a question of what do the allegations in the complaint state. Okay, well, right, we have to — you've talked to some — one of the things we'll have to figure out is what we do with the fact when something that's, in retrospect, screened out after the development of a record, how we deal with that. But if we're to then avert our eyes from the rest of the record, which seems to be the appropriate way of measuring these pleadings, why is it not just conclusory to say that I was — I'm similarly situated to the people in the photo? Why is that the basis, given that the discipline was, as alleged here, a whole host of other things that those other people in the photo did not do? Well, as alleged, it's really based on the photograph, and second, Your Honor, the allegations here say that he was specifically punished because of appearing in this photograph. The other people who appeared in the photograph were not punished. He was gay, and they were not. So that's the similarly situated piece. Well, where does he — so walk me through where in the complaint — I figure it's somewhere on 241 to 242, but where — where does Mr. Shields spell that out? Paragraph 4, Your Honor. He says he was singled out, and he was punished for appearing in this photograph, and the reason was because of his LGBT status. And it was an authorized photograph. That's what the allegations state. And then it goes on to state that the reason for his placement in disciplinary segregation was because he was LGBT. You can see that in paragraph 11, in paragraph 12 as well. So that is sufficient at the pleading stage. That hits all of the elements of an equal protection claim. And, Your Honor, I think — I guess — so what are we supposed to do then with the fact that we're reviewing a judgment and not a particular order? In fact, here we've got a non-order. It's only retroactively read as screening this out. Where they go to trial, and now we have a full record, including a record of the other reasons for discipline. What if we view that as ruling out the possibility that the allegations in the complaint are plausible? What do we do with that? It's an honest — I'm not sure either, but that's kind of where we are, given that the rest of the case proceeded on similar claims. It's certainly unusual. It's an odd procedural circumstance, I grant you. But I think if you look at the trial record, first of all, we would say there is absolutely sufficient evidence from the trial to support the equal protection theory that really was never asked of the jury. But second of all, really, it was never tried, I think, is kind of what it comes down to. The court made clear it was never tried. The jury was never asked about it. And so a jury could have credited my client's testimony, but they were never asked. Why do you think the jury would have come out differently on equal protection retaliation than they did on First Amendment retaliation? It would basically be the same facts, right? Yes, the adverse action is the same. Of course, the motive is different. And we can talk about their issues, of course, as our position with the First Amendment retaliation instruction. The jury could have, first of all, come out a different way on the motive. They also could have, there's five elements to a First Amendment retaliation claim. Again, our position is that there was issues in the jury instruction on that claim. The jury could have found that any one of those five elements weren't sufficient, but still found that there was a discriminatory motive with respect to the discipline on the equal protection claim. Can I ask, you said earlier that everybody agrees that this disparate treatment in punishment or investigation was dismissed at screening, but Mr. Shields didn't in the joint pretrial order, his contention still wanted to have that claim brought before the jury. So how should we treat the fact that Mr. Shields doesn't think that screening order eliminated that claim? Your Honor, I think Mr. Shields just didn't understand the effect of the screening order I think is really what it comes down to, but we can't ignore the fact that the court said this was dismissed at screening. This never paid it past the screening stage. That's what the court said it did, and that's really what we're here to review. Can I follow up on what Judge Johnston was asking you, because I am struggling with this too. What facts do we consider? The facts at the time of screening or the facts at the time of judgment in analyzing this claim? The facts at the time of screening. The screening order was evaluated based on the allegations that were before the court at that time. There's also cases in the circuit that say what's before this court for review is what is before the district court at the time that they make their decision, and though the post-trial ruling, obviously that ruling was issued post-trial, what she said was what she did prior to trial. I'm sorry, what the court said it did was that it dismissed the claim before trial. I think it's clear from the post-trial ruling that the dismissal occurred at that screening stage, at that initial stage. It's based on the allegations and the complaints. Ms. Bruce, if you could share those cases that you're looking to on this vaccine question of what we look at. I guess I just have one follow-up to your response to Judge Koh's question in terms of the overlap of the claims. Aren't these both the tried First Amendment claim and the screened equal protection claim alleged as a single count in the complaint as count one? You're right. They're alleged as count one. Why wouldn't the operative facts, why wouldn't we take that, again, under a pro se pleading standard, but why wouldn't that suggest at least that the operative facts are the same for both claims even if the elements are different? I think the operative facts, the series of events that led to the discipline, I agree with you, they're the same. Again, the motive is different and you see both of those allegations of motive both contributing to the claims in that count. Again, the five elements that form a First Amendment retaliation claim, they don't map on to equal protection. When we're talking about First Amendment retaliation, you need to ask whether, you know, you have several different elements that don't neatly map on to the equal protection claim. And so even though there are similar events, the outcome isn't necessarily the same in both cases. And again, really at bottom we're looking at the allegations and the complaints. I know I'm over time. I'll give you two minutes for rebuttal, but let me ask if, okay. We are going to thank you and bring you back for rebuttal and you'll have two minutes. Thank you. I'd like to thank the Court for the opportunity to address the panel. I'm Chris Davis for the appellees. The District Court properly entered judgment in favor of the NAACP defendants. The District Court did not err when screening the complaint, when granting summary judgment and or at trial. I plan on, oh, sorry. Is that here? Oh, I plan on going through the screening order, summary judgment, and then trial unless the Court has some other order that they'd like me to proceed at. But first, if the Court pleases, I'd first like to address jurisdiction. I know I didn't raise it in my pleadings, but it come to my attention that this Court lost jurisdiction over the dismissal of Shields' equal protection claim at the screenings because the claim was not dismissed, because the claim was not dismissed with prejudice and he failed to seek to amend that claim, which is deemed to be a voluntary dismissal. Well, but if he didn't, if the screening order didn't dismiss it, then he didn't have to amend it. And in the joint pretrial order, he said, hey, I want this claim going to the  But the thing is that the District Court, if you read the end of the screening order, and I think what counsel has said, that at the end, the Court goes through and delineates which claims are going to be proceeding. And the equal protection claim that he's alleging is not one of those claims that he, the District Court said would proceed to trial. And I have to agree, you know, I'm, I take the District Court at its word that that was an issue screening the case. And he was told specifically which claims. When we filed our motion for summary judgment, we thought the claim, that claim didn't exist because we didn't move for summary judgment on that claim. I think for, to us it was clear, to everybody, and unfortunately, I guess it wasn't clear to Mr. Shields, but it was clear to the District Court, and it was clear to us. And so I'm just, I don't know how else to respond to that. Can I ask you a different question? How does the end of disciplinary segregation explain the decision to transfer Mr. Shield to High Desert State Prison instead of back to LCC? Well, the reason why that he was transferred was because it was, he was charged with compromising staff, and so they didn't want to send him back to the prison where that staff member was. But they ultimately did. They ultimately did. They ultimately determined it was, and But the reason that you give for that transfer decision not being retaliatory is that he completed disciplinary segregation. So that's a Well, no, the reason why he was transferred from one prison to another is because that's what the offender management decision made the determination. The offender management decision under the ARs is the only entity that determines who is transferred where. And we don't have, we don't have in the record the reasons for why they transferred him specifically from to, because they're not defendants in this matter. But you know, he finished the disciplinary segregation February 22 of 2016. He doesn't get transferred to even High Desert State Prison until January 26, 2017, a year later. Right. And that's the, he could have just stayed at Ely State Prison. There was no obligation because they have a general population at Ely State Prison, just like they have at other prisons, even though at that time, Ely State Prison was our high, maximum security prison. But at the time, so they could have just, and that's the absurdity of this, because what he's alleging is that in 2015, they decided to do this. They decided, well, what we're going to do is we're going to, we're going to trump up these charges so that we can transfer you to Ely State Prison. But rather than just keeping you at Ely State Prison, we're going to retaliate against you by transferring you to High Desert State Prison, which is a minimum security, which is a medium, which was a medium security prison at the time, instead of transferring him to LCC, which is where he wanted to go, which is another medium security prison. Your Honor, prisoners just don't have the right to say whether they're, I'm sorry. So it sounds like Defendant Foster appears to be just in error, right, in reducing the sentence of the charge that was dismissed below. Well, it wasn't dismissed. Well, you explain to me. What was that action then? Was that a mistake in flipping the charges and, you know, resurrecting the dismissed charge, or did that defendant make an independent decision based on the record as to what was sufficient evidence for which of the two charges? Like, what happened there? Okay. So my understanding, okay, is from my reading of the record, is that he was not, he was not, the charge was not dismissed at the disciplinary hearing. It just wasn't Well, the disciplinary hearing, the transcript record is unclear, right? It wasn't clearly dealt with. It was that they were proceeding, what they did is they proceeded only on the one charge. But under the regulations, the Deputy Director So you're contesting that the theft charge was not dismissed at the first level?  But that's not clear in the record, though. Because Your Honor, these are not court proceedings. I mean, you're treating like this is like a court proceeding. These are prison administrative proceedings, and they're not court proceedings. And so what But if you're going to put somebody in disciplinary segregation, I assume they have due process rights here, which they do, and I assume then you're going to do it accurately and make a ruling on the charges. Are you saying there's no obligation on behalf of State prisons to actually make rulings on charges that are going to have serious consequences of disciplinary segregation? No. They do have, they do have, they do have, oh, sorry, Your Honor. Go ahead, please. I didn't, I, I, I apologize for speaking over, Your Honor. I didn't mean to. No, no, go ahead, please. Okay. It's, they do have a right, obligation to make a ruling on charges if they're going to use those charges to, they have an obligation to make a ruling on charges if they're going to use that charge to impose discipline on the inmate. Exactly, which is what the appeal says they did, that they're going to impose the, the theft charge, which was never found guilty on. No, but what, what, Your Honor, okay, you're, but the thing is, you're, the, the, the regulation that you're looking at is, is what his, what his, what he had the obligation, what he had the opportunity to do. And I think it was a, it was an act of mercy on his part, is what he was doing, is he was saying, hey, you know, I think that, I think that this is, shouldn't be, he shouldn't get as much punishment as he is, so what I'm going to do is I'm going to reduce the charge. And so he reduced it from the MJ 219, which is a class A offense, down to a class, I think it was a class C offense. And then instead of giving him one year of disciplinary segregation, which he didn't have a due process violation, he reduced it to six months. And under, if you look at the regulation, if I could find it.  So is your argument that the theft charge is a less serious offense than the staff compromise? That's right, Your Honor. And that's why he switched the charges? That's right. But where is that in the record? I'm hearing that for the first time. Well, that's, if you, if you look at the, if you look at his, his, his saying, he's saying that I'm changing this charge from this charge to this other charge. What's the, I guess, what's the standard of review for this, for Foster's opinion? So I've reviewed her disciplinary record and find sufficient evidence to uphold the guilty finding for MJ 219. There was no guilty finding. We can agree with that, right?  So is, is the, I mean, honestly, just trying to understand how this works. Is the appeal asking, then, Foster to look at the record at the underlying hearing and say, there's evidence, sufficient evidence here to support this charge or this charge, and I'm going to cut you a break and uphold, not the charge that you were found guilty of at the hearing, but uphold this other charge that's not lesser included or anything else, but it's just based on different facts because it'll give you a lighter punishment?  And that's, and that's, and it's, in that instance, it's entirely discretionary. He has, as long as he's not. Well, it can't be entirely discretionary because Mr. Shields has due process rights. No. No, except, except for no, Your Honor. He doesn't have any due process rights to grievance appeals. That's the. But, but it's, it, it can't be that, that the rights to the initial grievance, then, are meaningless because they can be arbitrarily overturned on, on appeal based on what is, I think we agree, a finding that never occurred. Well, he can't, he can't because, because, okay, for, to start off with, as I was saying, there are no due process rights in the grievance appeal process. That's, that's, that's been held by this Court. It's been held by the Seventh Circuit. It's been held by the Fifth Circuit. That there just simply aren't any. And therefore, it's, and therefore, you've got to start from that position. That what you have to look at is you have to look at the underlying disciplinary proceedings. Was he provided due process in those underlying disciplinary proceedings? And what we have here is, is they concede that he was. He, he was provided notice of hearings. He was provided an opportunity to present his evidence. He was provided everything that he wanted to do. But, but in this instance, he's being punished for a dismissed claim. No. Without any of those procedural protections, right? No. We all agree there was no finding of guilt on the theft charge. But the actual disciplinary segregation that Mr. Shields did time for was for that dismissed theft charge. It wasn't. He wasn't. And he, and, and so his punishment was based on that appeal. And in that process, he didn't have any procedural protections, right? This was just Defendant Foster. Well, he did. Doing this on. Okay. Go ahead, please. The procedural protections is, is that, for example, if the defense, if what, if what the court, if what he did was say, hey, you know, say, for example, it was reversed, okay? And he had, they had the two charges. And he was, and they found him guilty on the lesser charge. And then he goes up on appeal and says, well, whoa, whoa, whoa, guess what? I think you should have been convicted on the, the, the, the Class A instead of the Class C. And so I'm going to then say you're now convicted of the Class A offense and not the Class C offense. And therefore, I'm going to increase your punishment from six months to a year. Now, that would be a violation of due process because he is now acting not as a grievance, right, Responder, because he doesn't have, I guess that answers your question. He doesn't have the authority to do that. Because it's, so it's not just that it's a greater charge or a lesser charge. It's that, it's specifically that this is being cited to reduce his ultimate deprivation. Right. And so that's what I'm saying. So he's not being deprived of any liberty interest. In other words, the due process clause requires that you be, you know, you're deprived of life, liberty, or property without due process of law. Okay. He was provided due process. He got a 12-month sentence for a Class A felony. Okay. So he's not being deprived of anything. He's being, he's being, oh, sorry.  I mean, I guess you'd hopefully appreciate the concern here, Mr. Davis, that it can't be that you have a disciplinary process to which due process attaches that comes up with one result. And then a different disciplinary process, appeal, grievance, grievance of a grievance, whatever, that, to which due process doesn't attach, that is then free to come up with some other result. And I think your response is that as long as that second result results in a lesser punishment, then the first result, it doesn't matter what reasons are given? Right. You're right. And, I mean, so this is, I'm trying to understand what's happening here. Is your position that this isn't a mistake in terms of it, but that they're actually exercising discretion? There's evidence to support both. You want a lesser punishment. I'll cut you a break and give, and find something that wasn't found below because it gets you to the lesser punishment, that it was intentional?  You know, Your Honor, there's nothing in the record that says exactly how he went about it. But what is in the record is that he had the authority to do it under the NDOC regulations. And like I said, he's doing this in my viewpoint as an act of mercy. And I find it a little bit incredulous that he's now complaining that this is happening. I mean, if Your Honor was to go the opposite direction, say, well, this is a violation of due process, you know, I don't think they're going to be then exercising the discretion to reduce sentences because, say, for example, they didn't do it. There would be nothing in the record to say that they violated due process. And I would remind your Court that this Court in Wolf said that, you know, you shouldn't look at these proceedings as, you know, that you're not as full entitled to the full penalty of rights that you are in criminal proceedings. These are not criminal proceedings. These are administrative proceedings, you know, quickly to get through these cases because it's important that these cases go through in a timely manner in order to provide the punishment that they get so they can serve it and that they can impose the discipline that is necessary. Can I ask you? I want to ask you two more questions. Okay. Let's talk about the jury instruction issue and Chess, which says, you know, de novo review is not appropriate where the district court and the opposing party were fully aware of the potential problem. And in this case, looking at the transcript of the jury instruction conference, you know, it was the district court, you know, took out that Norwood deference instruction in the other jury instruction and left it in First Amendment retaliation. And there was a discussion between Mr. Rands, who was the counsel for the State or the defendants in that case, and he specifically references that this is a deference deletion in the due process instruction. So why isn't it a situation where everyone, both the district court and Mr. Rands, opposing counsel, opposing party, were fully aware of the problem? Why shouldn't then plain error review apply? Because, first of all, they weren't talking about it in that specific claim. They were talking about it in a different claim. And if you go through Chess — But they were clearly aware of the issue, right? Because they take it out of the free exercise claim, but then put it in the retaliation claim? Yeah. Because retaliation actually has — okay. The reason why it wasn't raised for anybody, because the retaliation claim actually has the requirement that they have to give deference to the — as part of the element of the offense in a retaliation claim. He has the burden of proving — oh, sorry. Got out of order. But no one's used that Norwood instruction outside the context of Eighth Amendment claims, and even in Eighth Amendment claims, there's only a subset that you can use that instruction, right? No. No, Your Honor. Well, I'm looking at the jury instruction notes that specifically say that there are certain, you know, bell case law conditions that would give you then the option of including this Norwood instruction. It doesn't — I mean, okay. Let's just say for the Eighth Amendment Ninth Circuit model jury instruction, it only says in the appropriate case. Right. But if you look in the Hoffman case, that's at 474-F, Fed Appendix 507, the Hoffman case actually had an Eighth Amendment case and the retaliation claim. But they offered the instruction in that case, and the only thing that was challenged in that case was whether or not it was — the only challenge in that case was whether it violated his rights under the — to have that instruction apply both to the Eighth Amendment case and the retaliation case. I mean, no, he was only alleging that the Eighth Amendment claim, applying it to his Eighth Amendment claim, violated his — violated his rights to his jury instructions. But they didn't say anything about the First Amendment claim. It was kind of a given that — that with the — because it's part of the element of the crime, that that kind of instruction is always given. And let — and I would like you — and I've gone to — But, you know, what is the legitimate correctional goal in enforcing the staff compromise regulations in retaliation for filing a grievance? What — what is the — That's the allegation, that they used the staff compromise regulation selectively against Mr. Shields because he filed a grievance. What would be any legitimate correctional goal to do that kind of retaliation? Well, the little — the correctional goal is not because he filed a grievance, but the correctional goal is because he's compromised staff. That's — that's where you come in with whether it's —  Whether they had a legitimate reason for imposing —  Sorry, for compromising staff. All right. But his argument is that you are selectively enforcing that staff compromise regulation against him because he filed a grievance. He exercised his First Amendment right to file a grievance. And so my question is, what is the legitimate correctional goal accepting his theory to do that? What's the legitimate correctional goal? Goal. To retaliate against an inmate for filing a grievance by then enforcing the staff compromise regulation. I don't think you can look at it that way. If you looked at it that way, there could never be a legitimate correctional goal. I mean, I don't think there is a legitimate correctional goal for retaliating against an inmate for filing a grievance. I mean, it's not because he's filing the grievance. The legitimate correctional goal has to be because for the underlying conduct of what he's doing. But why isn't that exactly what the instruction instructs? Say that again, Your Honor? That as Judge Koh says, I guess the concern is that the instruction says, and that the retaliation for impermissible reasons reasonably advanced a legitimate correctional goal, that it's somehow kind of almost an element here, but acts as an affirmative defense against — Well, it says in determining whether defendants violated plaintiff's rights as alleged, you should give deference to the prison in adopting and executing policies. But see, that's the thing. He is alleging that he was retaliated against by having the staff compromise regulations enforced against him because he filed a grievance, and you're saying we'll give deference to the prison officials for doing that retaliation. That's where I'm getting a little bit confused here. If there's never any legitimate correctional goal in retaliating against an inmate for filing a grievance, then there shouldn't be any deference given to prison officials for doing that. Okay. In Pratt, it says it's plaintiff's burden to prove, right, that the absence of a legitimate correctional goal and that courts should afford appropriate deference and flexibility to prison officials when evaluating the proper legitimate goal. Okay? I'm sorry. What are you reading from? That's in the Ross case, 632 Fed Appendix 415, and that's quoting Pratt. Right. But all those deference cases are Eighth Amendment cases. But the thing is that they're not First Amendment retaliation cases, right? No, no, no. But that's an element. That is an element that he has to prove. He has to prove, okay, that we didn't have a legitimate correctional goal for discipline and for doing the adverse action. We need to show that we didn't have. He needs to prove that, that we did not have a legitimate correctional goal for imposing the adverse action. And that's the thing he has to prove. And that's why he's entitled to deference, is because they're entitled to deference that they had in doing that legitimate correctional goal of preventing him from disciplining him. And so that's where you have to look at it, Your Honor. If you look at it in another way, it takes out the entire element of which is an element required to prove a retaliation claim. It takes out that element because I cannot, like Your Honor says, I don't see what legitimate correctional goal you had for retaliating. I mean, for retaliating against an inmate for exercising his First Amendment rights. I mean, that's not where the deference comes in. The deference comes in when, whether or not in disciplining him. And that they are entitled to have deference when they're doing that. And that's where the deference comes in. You're over seven minutes. Okay. Thank you. Sorry. Seven and a half minutes over your time. Thank you for answering all of our questions. Thank you. Let me just check to make sure that my colleague doesn't have any more questions for you. Okay. Thank you. And I'd just like to end saying that, you know, we're entitled to qualified immunity because there's no violation of the law. Even if Your Honors are correct in the way, there's no clear-to-establish law in this area. And therefore, we're entitled to qualified immunity either way. Thank you very much. All right. Thank you. Thank you for your argument. Thank you, Your Honor. To answer Your Honor's question about the case I was referring to, that's the Kirshner case, 842nd F. 2nd 1074. In that case, and the cases that come from it, stand for the proposition that the appellate court looks at what was before the district court at the time it made its decision. I'll talk about procedural due process. What Defendant Foster said she did was uphold the guilty finding that didn't exist. So that just fundamentally violates the precepts from Wolf, that the reason for the segregation in advance of the segregation, you need notice of the  And the reasons for why the findings, the reason for the imposition of administrative segregation, although not before the court at the summary judgment record, Defendant Foster did just that. Could Foster make an independent judgment about whether the evidence was sufficient to warrant the theft charge? No, Your Honor. That would violate Wolf. Wolf says in advance of the segregation, in advance of the punishment, you need notice of the charges, you need notice of But he was, he had the full notice and had the full hearing at the first level. You're saying he needs one at every single level and needs to repeat that same process? No, Your Honor. But he was found not guilty at the first level. So if you're reversing the not guilty charge to guilty charge to a, I'm sorry, the not guilty finding to a guilty finding on appeal, at that point, you need notice. But what's the prejudice? He was continued to stay in administrative segregation at that point. When Did he stay past the point at which the new grounds on appeal set, the six months? No, Your Honor. He didn't. But his presence in administrative segregation at that point was not supported by notice. And that's really the core of the due process issue here. What if the defendant Foster just made an innocent or honest mistake? Would that be a due process violation? That would still be a due process violation if it violated the notice requirement of Wolf and of its progeny. She did testify at trial. And though it's not before the court at summary judgment, she did say that she wasn't empowered to change a not guilty finding to a guilty finding. So that simply also wasn't within her authority. Briefly, on qualified immunity, which was raised at the end of the argument, qualified immunity isn't an issue here. The court ruled against the defendant's at summary judgment on all counts with respect to qualified immunity. And that was both correct and also never raised again. It wasn't raised at trial and it wasn't Do you agree there is a legitimate correctional reason to enforce the staff compromise regulations? We're not challenging the legitimacy of the staff compromise policy. We agree that that is a policy that the prison can set. We are saying you can't wield that policy in a retaliatory fashion. You can't use it as a cover or a ruse to retaliate against an inmate on the basis of their exercise of their First Amendment rights. Thank you for that clarification. Let me ask you one last question. What's the evidence that Mr. Shields was transferred to the High Desert State Prison for retaliatory reasons instead of going back to LCC right away? Your Honor, that evidence is in the summary judgment record at the form of his affidavits. There were two declarations that he submitted in support of summary judgment at 149 to 55. Now, be specific. Sure. Other than the fact that he was told he would go to LCC and didn't go there right away, what is there? When he was initially transferred, when he initially arrived at ESP, he was told that the reason he was there was for filing grievances. And, again, you can prove the causation piece by circumstantial evidence. The reason he went to Eli, not the reason he went to High Desert State Prison, right? Right. But it does support the inference that he was kept out of Lovelock for that same reason, given the other circumstances that he was initially in. That's speculation, isn't it? It's circumstantial, I would say. But, nonetheless, circumstantial evidence can support an inference of causation. Thank you, Your Honor. We respectfully request that the Court reverse the judgment of the district court. All right. I want to thank both counsel for your very helpful arguments. Thank you very much.  We're going to take a brief recess so counsel in the next case can get set up. And we'll be back in five minutes. Thank you.
judges: HURWITZ, KOH, JOHNSTONE